# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

In Re:

THAPAN GROUP, LLC                          Chapter 11

        Debtor

Case No. 13-30743

## DEBTOR'S PLAN OF REORGANIZATION

The above named Debtor and Debtor-in-Possession proposes the following Plan of Reorganization pursuant to Chapter 11 of Title 11 of the United States Code.

## ARTICLE I

### DEFINITIONS

For purposes of this Plan of Reorganization, the following terms shall have the respective meanings as hereinafter set forth and shall be capitalized when used as terms defined in this Article I. Other capitalized terms used herein are defined in the Bankruptcy Code.

1.01 "Administrative Claims" means the costs and expenses of administration of these Chapter 11 cases as, when and to the extent allowed by the Bankruptcy Court including, the actual, necessary costs and expenses of preserving the Debtor's estate, (other than such claims or portions thereof which, by their express terms, are not due or payable by the date when the Confirmation Order becomes a Final Order), all allowances of compensation or for reimbursement of costs and expenses under 330 of the Code, or as otherwise allowed by the Bankruptcy Court, and for all fees and charges assessed against the Debtor under Chapter 11 of Title 28 of the United States Code.

1.02    "Allowed Claim" means a Claim (a) which has been scheduled by the Debtor pursuant to 521(a) and 1106(a)(2) of the Bankruptcy Code, other than a Claim scheduled as disputed, contingent, or unliquidated, or (b) proof of which has been filed pursuant to 501(a) of the Bankruptcy Code within the time limitation fixed by order of the Bankruptcy Court, and as to which no objection to the allowance thereof has been interposed, or (c) the portion of any Claim so scheduled or filed which, after objection thereto, has been allowed by a Final Order.

1.03    "Allowed Interest" means the equity interest in the Debtor held by the owners of the common stock.

1.04    "Allowed Priority Tax Claim" means that portion of an Allowed Claim entitled to priority under 507(a)(8), inclusive, of the Bankruptcy Code.

1.05    "Allowed Secured Claim" means that portion of an Allowed Claim equal to the value of the interest of the holder thereof in property of the Debtor securing such Allowed Claim as agreed upon between the holder thereof and the Debtor or, in the event of a dispute, as determined by the Bankruptcy Court pursuant to 506(a) of the Bankruptcy Code.

1.06    "Allowed Tax Claim" means that portion of a claim by a governmental unit entitled to priority under 507(a)(8) of the Bankruptcy Code.

1.07    "Bankruptcy Court" means the United States Bankruptcy Court for the District of Connecticut in which the Debtor's Chapter 11 case is pending.

1.08    "Chapter 11" means Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code").

1.09    "Chapter 11 Case" means Thapan Group, LLC, Case No. 13-30743, currently pending in the Bankruptcy Court.

1.10    "Claim" means a claim against the Debtor as defined in 101(4) of the Bankruptcy Code.

1.11    "Claimant" means the holder of an Allowed Claim.

1.12 "Confirmation" means entry of an Order confirming the Plan by the Bankruptcy Court in accordance with Chapter 11.

1.13 "Confirmation Date" means the date upon which the Bankruptcy Court enters an order confirming the Plan in accordance with Chapter 11.

1.14 "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan, in accordance with Chapter 11.

1.15 "Consummation" means payment on, or as soon as practicable after, the Effective Date of substantially all sums or other consideration due under the Plan as of such date.

1.16 "Debtor" means Thapan Group, LLC.

1.17 "Disbursing Agent" means the Debtor or its designee.

1.18 "Disputed Claim" means any Claim (i) which is scheduled or disputed, contingent or unliquidated, or (ii) proof of which has been filed within the time limitation fixed by an order of the Bankruptcy Court pursuant to 501(a) of the Bankruptcy Code, as to which an objection to the allowance thereof has been interposed, which objection has not been determined by a Final Order.

1.19 "Distribution Date" means the latter of the effective date or, as to a claim to which an objection is pending on the effective date, ten (10) days after the entry of a Final Order determining such claim or any part thereof to be an Allowed Claim.

1.20 "Effective Date" means the first business day more than 10 days after the Confirmation Date provided the Confirmation Order becomes a Final Order, or as soon as physically practicable thereafter.

1.21 "Final Order" means an Order or judgment which has not been reversed, stayed, modified or amended and as to which no appeal is pending and as to which the time to appeal and to seek leave to appeal or to seek review or rehearing has expired.

1.22  "Petition Date" means April 23, 2013, the date on which the Debtor filed the petition.

1.23  "Plan" means this Plan of Reorganization and any amendments hereto or modifications hereof made in accordance with Chapter 11 of the Bankruptcy Code.

1.24  "Post--Confirmation Expense" means all expenses reasonably incurred subsequent to the entry of the Confirmation Order in consummating the Plan, including, but not limited to, fees and expenses of counsel and accountants retained by the Debtor pursuant to 327 and 1103(a) of the Code.

1.25  "Post--Petition" means occurring, arising or happening after the filing of the petition on April 23, 2013.

1.26  "Pre--Petition" means occurring, arising or happening prior to the filing of the petition on April 23, 2013.

1.27  "Pro--Rata" means, with respect to a claimant of a particular class, in the proportion that the allowed claim (or the then unpaid portion thereof) of such claim in such class bears to the aggregate allowed claims (or the aggregate then unpaid portion thereof) of all claimants in the same class. Included in such calculation shall be the full amount of the Disputed Claims in the particular class which have not been asserted or are otherwise pending and which have not yet been allowed or disallowed by a final order.

**Rest of Page Left Blank Intentionally**

## ARTICLE II

DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

| | | |
|---|---|---|
| 2.01 | Class 1: | Allowed Secured Claim - $2,580,687.32 |
| 2.02 | Class 2: | Allowed Secured Claim - $90,890.14 |
| 2.03 | Class 3: | Allowed Secured Claim - $12,870.38 |
| 2.04 | Class 4: | Allowed Unsecured Priority Claim - $535.00 |
| 2.05 | Class 5: | General Unsecured Claim - $1,850.00 |
| 2.06 | Class 6: | Equity Class |

## ARTICLE III

TREATMENT OF ADMINISTRATIVE EXPENSES, AND

ALL CLASSES AND INTERESTS UNDER THE PLAN

3.0    Administrative Claims

The costs and expenses of administration of the Chapter 11 Case allowed under §507(a)(2) of the Bankruptcy Code are to be paid in full upon confirmation, or as proposed in the Plan of Reorganization, or as agreed between the Debtor and the parties holding such claims. Included herein are claims incurred in the Chapter 11 Case by the Debtor. Many of these items are on open credit terms and will be paid in accordance with its ordinary terms. The fees required to be paid to the United States Trustee, shall be paid in full on the confirmation of the Debtor's Plan of Reorganization.

Included in Administrative Expenses are fees and expenses of the Law Offices of Neil Crane, LLC, retained by the Debtor. The fees and expenses will be paid on the effective date or as soon thereafter as they are approved by the Bankruptcy Court. The funds and terms to pay fees and expenses to the Law Offices of Neil Crane, LLC will be available from the Debtor as will be agreed upon between the Debtor and the Law Offices of Neil Crane, LLC prior to Confirmation.

**A.**

Class 1    This is the Claim of Town of Manchester, representing unpaid Real Estate Taxes owed on the property located at 252 Spencer Street, Manchester, Connecticut. Under the Plan of Reorganization, the claim is classified as an allowed secured claim. This claim will be paid in full over sixty (60) months at an interest rate of 18.00% per annum calculated from the date of filing in monthly installments of $2,308.01per month.

Class 2    This claim is the claim of Lakeland West Capital, LLC, (hereinafter known as "Lakeland") and is comprised of seven (7) Promissory Notes all secured by mortgages against the three pieces of real estate known as Clinton, Middle Turnpike, and Spencer. All proceeds from the Promissory Notes were used in the acquisitions of the properties. The Promissory Notes designate which properties were acquired with the proceeds from each Promissory Note. The Promissory Notes are summarized as follows:

| Proof of Claim Number | Proof of Claim Total | Account Number | Property Location |
|---|---|---|---|
| 3 | $609,369.17 | 4516 | Clinton |
| 6 | $277,816.53 | 4520 | Clinton |
| 4 | $527,377.11 | 4519 | Middle Turnpike |
| 5 | $62,232.19 | 4518 | Middle Turnpike |
| 7 | $274,781.99 | 4522 | Middle Turnpike |
| 8 | $242,284.91 | 4521 | Spencer |
| 9 | $586,825.42 | 4517 | Spencer |
| Total | $2,580,687.32 | | |

The Debtor proposes to make a total monthly payment to Class 2 in the amount of $19,728.88. Said monthly payment is based upon a total debt due of Two Million Five Hundred and Eighty Thousand Six Hundred and Eighty Seven Dollars and 32/100 ($2,580,687.32) paid monthly over

6

180 months from the effective date of the Plan at an interest rate of 4.49%.[1] The total monthly payment shall be allocated to each of the seven loans and applied toward each piece of real property as follows:

A. The property located at 196 East Main Street, Clinton, Connecticut 06413 ("Clinton") is referenced on the Promissory Note for account numbers 4516 and 4520. The allocation of the monthly payment to be applied to account number 4516, shall be $4,658.50 per month for 180 months at an interest rate of $4.49%. The allocation of the monthly payment to be applied to account number 4520, shall be $2,123.36 per month for 180 months at an interest rate of $4.49%.). The total monthly payment for the two (2) loans referenced on the Promissory Notes shall be $6,782.36.

B. The property located at 288 Middle Turnpike West, Manchester, Connecticut 06040 ("Middle Turnpike") is referenced on the Promissory Note for account numbers 4519, 4518, and 4522. The allocation of the monthly payment to be applied to account number 4519, shall be $4,031.70 per month for 180 months at an interest rate of $4.49%. The allocation of the monthly payment to be applied to account number 4518, shall be $475.75 per month for 180 months at an interest rate of $4.49%. The allocation of the monthly payment to be applied to account number 4522, shall be $2,100.66 per month for 180 months at an interest rate of $4.49%. The total monthly payment for all three (3) loans referenced on the Promissory Notes shall be $6.608.11.

---

[1] The Debtor has, since the filing date, continued to make monthly payments to Lakeland West Capital, LLC pursuant to the Court approved Stipulations. The application and accounting of those payments toward each Promissory Note have not been accounted for in this calculation of the future monthly payment, as the amount of those payments applied toward principal has not been calculated.

7

C.     The property located at 252 Spencer Street, Manchester, Connecticut 06040 ("Spencer") is referenced on the Promissory Note for account numbers 4521 and 4517. The allocation of the monthly payment to be applied to account number 4521, shall be $1,852.23 per month for 180 months at an interest rate of $4.49%. (A copy of the amortization schedule for this loan is attached hereto as Exhibit G). The allocation of the monthly payment to be applied to account number 4517, shall be $4,486.18 per month for 180 months at an interest rate of $4.49%. (A copy of the amortization schedule for this loan is attached hereto as Exhibit H ). The total monthly payment for these two (2) loans referenced on the Promissory Notes shall be $6,338.41.

In the event that the Debtor sells or obtains funds to refinance any one of the properties, the Debtor shall be permitted to consummate such sale or refinance of that property. In the event of a sale or refinance, Lakeland, upon receipt of the balance due for each Promissory Note against a particular property, shall agree to release any and all mortgages that exist against that particular property, and reflect the applicable Promissory Notes as paid in full. Balances due shall be determined pursuant to the above schedule of debts. In addition to repayment of the outstanding principle balance on a particular property through sale or refinance, an additional premium of five (5%) percent of the principal balance due on the Promissory Notes secured by the other properties shall be paid[2].

Class 3     This is the Claim of Town of Clinton, for post-petition real estate taxes. The Debtor is contacting the Town of Clinton to withdraw the Proof of Claim or an objection will be filed to the Proof of Claim. If the Proof of Claim is withdrawn or an Objection to Claim is sustained, the claim would be reduced to $0.00 with no payments to be made by the Debtor to

---

[2] This provision would work as follows: For example if Middle Turnpike where to sell, Lakeland would receive the balance due and referenced above of $864,391.29 plus five (5%) percent of the principal due on the remaining Promissory Notes secured by the other two properties which total $1,716,296.03 times 5% equals $85,814.80 for a total payoff of $950,206.09.

this creditor under the Plan. If the Town of Clinton does not withdraw the Proof of Claim or an Objection to Claim is overruled, the Debtor will propose to pay this claim in full over sixty (60) months. The claim will be paid at an interest rate of 18.00% per annum calculated from the date of filing, paid in monthly installments.

Class 4    This is the Claim of the State of Connecticut, representing the priority portion of unpaid taxes. Under the Plan of Reorganization the claim is classified as an unsecured priority claim pursuant to 11 U.S.C. 507(a)(8). Pursuant to §1129 (a)(9)(C)(ii) payment of Class 4 needs to be paid in full in the amount of $535.00 with interest within 5 years from the date of relief. The interest rate on these payments will be paid at twelve (12%) percent per annum. This claim will be paid in full within 30 days of the effective date of the Plan.

Class 5    This class includes the submitted claims of creditors that have "allowed claims" as defined by 11 U.S.C. §502. Total payments for this class shall be paid a total of $1,850.00, due only to the State of Connecticut. This claim will be paid in full within 30 days of the effective date of the Plan.

Class 6    This class consists of the one holder of equity interest in the Debtor, Nalini Y. Patel, as set forth in the Debtor's Operating Agreement and other company records as of the date of filing. The Equity Holder shall retain her interest in the Debtor in exchange for the substantial contributions. The Equity Holder also agrees to provide funds required for payments set forth above in the event that Debtor's income is insufficient to make such payments.

## ARTICLE IV

### EXECUTION OF THE PLAN AND DISCHARGE

1. The Debtor proposes to fund payment of the plan with ordinary business income. This amount is sufficient to provide revenue to support a successful Plan of Reorganization as well as afford the Debtor the ability to pay all other current expenses as they may become due. In the event of unexpected monthly expenses owed by the Debtor, the principal of the Debtor will provide the funds necessary to cover the expenses. The Debtor proposes to make payments on all Allowed Claims over a five year period in accordance with provisions of the Plan.

2. On Confirmation, the Debtor, as reorganized, will retain all property of the estate, and any property transferred to creditors of the Debtor pursuant to the express terms of the Plan. Retained property shall be used and employed by the Debtor in the continuation of its financial affairs, subject to the security interest and liens of allowed secured claims as provided by the Plan.

3. Confirmation of the Plan shall result in the discharge of all debts of the Debtor, except as otherwise provided herein.

## ARTICLE V

### EXECUTORY CONTRACTS

The Debtor will assume the lease for Clinton, Middle Turnpike and Spencer. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.

If you object to the assumption of your unexpired lease or executory contract, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of

the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in the Plan, or the subject of a separately filed Motion to Assume or Reject, will be rejected under the Plan. Consult your advisor or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your Objection to the Plan within the deadline for objecting to the Confirmation of the Plan.

## **ARTICLE VI**

### GENERAL PROVISIONS

1. The Debtor reserves the right to modify the Plan in accordance with §1127 of the Bankruptcy Code.

2. Except as otherwise provided herein, Confirmation of the Plan shall constitutes full settlement, release and discharge of any and all claims in the Chapter 11 Case.

3. The Debtor shall act as its own disbursing agent under the Plan and shall establish such account or accounts as may be required therefor with respect to the payments to be made to the holders of all claims.

4. Notwithstanding any other provisions hereof respecting time of payment, no payment shall be made on a Disputed Claim until the entry of a Final Order resolving such dispute.

5. The Debtor is authorized to make payments on a Claim to the holder thereof as set forth in the most recent proof of such Claim filed with the Court, or in the absence of a proof, to the holder as scheduled by the Debtor or ordered by the Court.

## ARTICLE VII

## PROCEDURES FOR RESOLVING AND TREATING CONTESTED AND CONTINGENT CLAIMS

1. Objection Deadlines: As soon as practicable, but in no event later than the Objection Deadline, Objections to Disputed Claims shall be filed with the Bankruptcy Court and subsequently served upon the Holders of each of the Disputed Claims.

2. Responsibility for Objection to Disputed Claims and Prosecution of Objections: The Reorganized Debtor shall have the exclusive responsibility for objecting to Claims following the Confirmation Date. On and after the Confirmation Date, except as the Bankruptcy Court may otherwise order, the filing, litigation, settlement or withdrawal of all Objections to Disputed Claims shall be the responsibility of Reorganized Debtor.

3. No Distributions Pending Allowance: Notwithstanding any other provision of the Plan, no payments or distributions shall be made with respect to a Disputed Claim unless and until all Objections to such Disputed Claim have been determined by Final Order.

4. Distribution After Allowance: Distributions from Reorganized Debtor to each Holder of a Disputed Claim, to the extent that it ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan governing the Class of Claims to which the Disputed Claim belongs. As soon as practicable after the date the Order of Judgment of the Bankruptcy Court allowing such Claim becomes a Final Order, but in no event later than twenty (20) days after such Claim becomes an Allowed Claim, any consideration that would have been distributed in respect of the Disputed Claim had it been an Allowed Claim at the Effective Date shall be distributed, without interest, to the Holder of such Claim.

5. Treatment of Contingent Claims: Until such time as a Contingent Claim becomes fixed and absolute, such Claim shall be treated as a Disputed Claim for purposes related to estimations, allocations, and distributions under the Plan.

## ARTICLE VIII

### DEFAULT AND MODIFICATION PROVISIONS

1. The occurrence of any of the following shall constitute an Event of Default:

   (a) Failure on the part of the Debtor to pay fully when due any payment required to be made in accordance with the provisions of this Plan, which failure remains uncured for a period of thirty (30) days after written notice from the Claimant so affected; and

   (b) Failure on the part of the Debtor to perform or observe any term or provision set forth in this Plan, other than those referred to in subsection (1) above, or set forth in any document or instrument delivered in connection herewith, which failure remains uncured for a period of sixty (60) days after written notice from the Claimant so affected.

2. If an Event of Default shall have occurred and be continuing without cure for the applicable time period set forth in 1 above, the holders of 25% in amount of the Allowed Claims then outstanding in the Class in which there is such a default may declare all amounts which remain payable to that Class immediately due and owing by sending written notice to the Debtor to that effect in conformance with Article XII of the Plan. In addition, after such declaration, all Claimants covered by this Plan shall have the right to pursue any and all remedies available to them under law and, as to holders of Allowed Secured Claims as to whom an Event of Default has occurred and remained uncured, said holders shall be permitted to take possession of their collateral without further recourse to the Bankruptcy Court or other Courts.

3.  The Plan may be modified upon application of the Debtor or corrected prior to entry of the Confirmation Order without additional disclosure, pursuant to §1127 of the Bankruptcy Code, provided that, after notice and hearing, the Bankruptcy Court finds that such modification does not materially or adversely affect any claimant or class of claimants and the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code.

4.  After the entry of the Confirmation Order, the Debtor, with approval of the Bankruptcy Court, and so long as it does not materially or adversely affect the interest of any such claimants or class of claimants, may remedy any defect or omission, or reconcile any inconsistencies in the Plan, or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and effect of the Plan.

## ARTICLE IX

### RETENTION OF JURISDICTION

The Court shall retain jurisdiction of this case pursuant to the provisions of Chapter 11 of the Bankruptcy Code, until the final allowance or disallowance of all Administrative Expenses and Claims, but only with respect to the following matters:

1.  To enable the Debtor to complete any and all proceedings which it may bring prior to entry of the Confirmation Order, to set aside liens or encumbrances and to recover any preferences, transfers, assets or damages to which it may be entitled under applicable provisions of the Bankruptcy Code or other federal, state or local law;

2.  To adjudicate all controversies concerning the classification or allowance of any Claim or equity security interest;

3.  To hear and determine all Claims arising from the rejection of any executory contracts, including leases, and to complete the rejection and termination thereof with respect to any executory contracts as to which an application for rejection or termination is filed prior to entry of the Confirmation Order;

4. To liquidate damages in connection with any disputed, contingent or unliquidated Claims;

5. To adjudicate all Claims to a security or ownership interest in any property of the Debtor or in any proceeds thereof including any Order of the Bankruptcy Court as entered by this Court during the pendency of the Chapter 11 proceedings;

6. To recover all assets and properties of the Debtor wherever located;

7. To fix the allowance of compensation to all professionals, and to determine any disputed Administrative Expenses;

8. To determine such other matters for which provision is made in the Confirmation Order;

9. To issue such Orders and enforce such Orders as are necessary, integral or appropriate to carry out the provisions of the Plan, including but not limited to orders interpreting, clarifying or enforcing the provisions thereof, and to authorize modifications of the Plan consistent with the Bankruptcy Code.

## ARTICLE X

### DISCHARGE AND RELEASE

1. Except as otherwise provided in the Confirmation Order or the Plan, the entry of the Confirmation Order acts as a discharge effective as of the effective date of any and all debts of the Debtor that arose at any time before entry of the Confirmation Order including, but not limited to, all principal and interest accrued thereon, pursuant to §1141(d)(1) of the Bankruptcy Code. The discharge of the Debtor shall be effective as to each claim, regardless of whether a Proof of Claim therefor was filed, whether the claim is an Allowed Claim, or whether the holder thereof votes to accept the Plan.

## ARTICLE XI

### NOTICES

All notices required to be made in or under the Plan shall -be in writing and shall be mailed by registered or certified mail, return receipt requested:

1. If to the Debtor, Thapan Group, LLC., c/o Law Offices of Neil Crane, LLC, 2679 Whitney Avenue, Hamden, Connecticut 06518.

2. If to a creditor, at the address set forth on the Debtor's schedules or on a Proof of Claim of such Creditor, if one has been filed.

Any person may change the address at which he or she is to receive notices for purposes of the Plan by sending written notice pursuant to this provision to the Person to be charged with knowledge of such change.

**DEBTOR,**

Thapan Group, LLC

Dated: 11/30/13         By: /s/ Neil Crane
                        Neil Crane, Esquire
                        Law Offices of Neil Crane, LLC
                        2679 Whitney Ave
                        Hamden, CT 06518

16